1    J. Russell Stedman (117130), rstedman@bargerwolen.com
      Travis R. Wall (191662), twall@bargerwolen.com
2    BARGER & WOLEN LLP
      650 California Street, 9th Floor
3    San Francisco, California  94108-2713
      Telephone:  (415) 434-2800
4    Facsimile:   (415) 434-2533

5    Mark E. Schmidtke (*Pro Hac Vice*)
      OGLETREE, DEAKINS, NASH, SMOAK
6    & STEWART, P.C.
      20 South Clark Street, 25th Floor
7    Chicago, IL 60603
      Telephone:   (312) 558-1220
8    Facsimile     (312) 807-3619

9    Attorneys for Defendants and Counterclaimant
      SUN LIFE ASSURANCE COMPANY OF CANADA
10   and its dba SUN LIFE FINANCIAL

11

12                **UNITED STATES DISTRICT COURT**

13             **NORTHERN DISTRICT OF CALIFORNIA**

14

| | |
|---|---|
| ENIKO PRAKASH, | CASE NO.: C06-07592 SC (BZ) |
| Plaintiff, | **SUN LIFE ASSURANCE COMPANY OF CANADA'S MOTION IN LIMINE NO. 1:** |
| vs. | |
| | **FOR TERMINATING SANCTIONS ON COUNTER-CLAIM AND IN THE ALTERNATIVE FOR SEVERE EVIDENTIARY SANCTIONS DUE TO SPOLIATION OF EVIDENCE** |
| PULSENT CORPORATION EMPLOYEE LONG TERM DISABILITY PLAN, | |
| Defendant. | |
| | **(MISREPRESENTATION COUNTER-CLAIM ONLY)** |
| SUN LIFE FINANCIAL and SUN LIFE ASSURANCE COMPANY OF CANADA, | |
| Real Parties in Interest. | Date: March 20, 2009 |
| | Time: 10:00 A.M. |
| | Courtroom 1, 17th Floor |
| | **The Honorable Samuel Conti** |

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

SUN LIFE'S MOTION IN LIMINE NO. 1

# TABLE OF CONTENTS

PAGE

1.   INTRODUCTION ................................................................................................2

2.   STATEMENT OF FACTS ...................................................................................4

   A.   Eniko Helps Found Verseon and Serves on Board After Going on Disability
        Claim ........................................................................................................4

   B.   Sun Life Denies Eniko's Appeal and then she Immediately Starts Working at
        Verseon as its Chief Operating Officer ...............................................................5

   C.   Sun Life Obtains Almost No Information in Discovery Regarding Eniko's
        Patent and Employment Activity at Verseon ......................................................6

   D.   Verseon's Production Lacked Documents Employers Typically Maintain ...................7

   E.   Counter-Defendants Systematically Destroyed All Evidence Reflecting Eniko's
        Work for the Company .................................................................................8

        (1)   Verseon Destroyed Eniko's Desktop Computer ........................................8

        (2)   Verseon Erased all Files and Data on Eniko's Laptop after Sun Life Issued
              a Subpoena ........................................................................................9

        (3)   Verseon Manipulated Data and "Shredded" a File on Eniko's Laptop One
              Day before a Court Ordered Inspection ...............................................10

        (4)   Verseon Destroyed Ms. Prakash's E-Mails ..........................................11

        (5)   Verseon Destroyed Voicemails that Ms. Prakash Sent and Received ...............12

        (6)   Counter-Defendants Made No Attempt to Halt the Overwriting of Data on
              Verseon's Servers ............................................................................12

        (7)   Verseon Withheld the Production of Relevant Documents ...............................13

3.   ARGUMENT .....................................................................................................14

   A.   Spoliation of Evidence can be Shown with Either Intentional or Negligent
        Conduct ..................................................................................................14

   B.   Counter-Defendants Had an Obligation to Preserve Evidence at Verseon ...................14

   C.   The Court Should Strike Counter-Defendants' Answer ..............................................15

        (1)   Counter-Defendants Acted in Bad Faith ..............................................16

        (2)   The Spoliation Prejudiced Sun Life ......................................................18

   D.   At a Minimum, Sun Life is Entitled to Evidentiary Sanctions and a
        Jury Instruction Permitting an Adverse Inference against Counter-Defendants ...........19

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

1

4.    CONCLUSION..................................................................................................................20

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

# TABLE OF AUTHORITIES

PAGE

**Cases**

*Anheuser-Busch, Inc. v. Natural Beverage Distributors,*
    69 F.3d 337 (9th Cir. 1995) ................................................................... 16

*Columbia Pictures, Inc. v. Bunnell,*
    245 F.R.D. 443 (C.D. Cal. 2007) ........................................................... 18

*Fjelstad v. American Motor Co.,*
    762 F.2d 1334 (9th Cir. 1985) ............................................................... 16

*Glover v. BIC Corp.,*
    6 F.3d 1318 (9th Cir. 1993) ................................................................... 14

*Leon v. IDX Systems Corp.,*
    464 F.3d 951 (9th Cir. 2006). ............................................... 3, 14, 15, 17

*Residential Funding Corp. v. Degeorge Financial Corp.,*
    306 F.3d 99 (2d Cir. 2002) .................................................................... 14

*Silvestri v. GMC,*
    271 F.3d 583 (4th Cir. 2001) ................................................................. 15

*United States v. Kitsap Physicians Serv.,*
    314 F.3d 995 (9th Cir. 2002) ................................................................. 14

*West v. Goodyear Tire & Rubber Co.,*
    167 F.3d 776 (2d Cir. 1999) .................................................................. 14

*World Courier v. Barone,*
    2007 U.S. Dist. LEXIS 31714 (N.D. Cal. Apr. 13, 2007) ...................... 15

*Zublake v. UBS Warburg LLC,*
    220 F.R.D. 212 (S.D.N.Y. 2003) ........................................................... 14

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

**MOTION IN LIMINE**

Sun Life moves *in limine*, pursuant to Federal Rules of Procedure Rule 37 and this Court's inherent power to levy sanctions in response to abusive litigation practices, for an order striking Counter-Defendants' answer to Sun Life's Counter-Claim, leaving only the issue of damages to be tried. In the alternative, Sun Life seeks an order imposing severe evidentiary sanctions against Counter-Defendants: (1) an instruction to the jury that it should presume Ms. Prakash actively worked for Verseon from its formation in July 2002 through at least March 2007 as the result of their and their company Verseon's destruction of evidence, (2) an instruction to the jury that it may draw an adverse inference against Counter-Defendants that the destroyed or withheld evidence would not have supported their position (the "spoliation inference") and (3) precluding Counter-Defendants from introducing evidence or argument contending that Ms. Prakash did not work for Verseon during this time period or contending that her admitted employment from September 1, 2006 through March 31, 2007 was a "failed return" to work.

This motion is made on the grounds that Counter-Defendants have destroyed and significantly altered evidence and failed to produce evidence in pending or reasonably foreseeable litigation.

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

-1-
SUN LIFE'S MOTION IN LIMINE NO. 1
CASE NO.: C06-07592 SC (BZ)

1.   **INTRODUCTION**

Counter-Defendants have destroyed and altered evidence that is central to Sun Life's Counter-Claim.  Sun Life relies extensively upon Eniko Prakash's documented activities in connection with Verseon Corporation (Verseon) and sought in discovery further evidence from them and Verseon to support its contention that Counter-Defendants misrepresented her medical conditions, symptoms and limitations, her ability to work and her actual activities.  This evidence would not have been limited to her admitted work for Verseon in September 2006 through March 2007, but also would encompass her contributions to the founding of the company and to its ongoing development in 2003, 2004 and 2005 while Sun Life was paying Ms. Prakash disability benefits.

Counter-Defendants' counsel, Laurence Padway, represented to the Court in a case management statement filed on March 16, 2007 that he had instructed his clients to preserve all potentially relevant evidence and to avoid all document-destruction and ongoing erasures of material relevant to the issues in this case.  At the time Mr. Padway made this representation to the Court, Eniko Prakash still worked at Verseon.  Thus, her computers and all work and employment records related to her activities still existed.

Rather than preserve evidence, during the ensuing months Counter-Defendants accelerated the destruction of data.  Counter-Defendants directly and through their company Verseon, which they control:

- Overwrote all data on Eniko's desktop computer and then physically destroyed the computer's hard drive;
- Erased all files on Eniko's laptop and replaced the operating system;
- Deleted data from Eniko's laptop in direct violation of a court order;
- Saved certain e-mails they wanted to produce from Eniko's computer and destroyed the rest;
- Deleted all voicemails received by or sent by Eniko, which should have been saved on her computer as e-mails and on other employee's computers;
- Destroyed her work calendar and contact information;

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

-2-
SUN LIFE'S MOTION IN LIMINE NO. 1
CASE NO.: C06-07592 SC (BZ)

- Destroyed logs of internet activity;

- Failed to take any steps to prevent the routine destruction of any employment related files on Verseon's servers such as activity logs, login information, work files, e-mails, and work product;

- Destroyed all evidence of expense advancement, reimbursement or travel while simultaneously asserting that numerous international trips were personal only and not for any Verseon business;

- Withheld from production evidence related to Eniko Prakash's travel after July 2002, except for a 2004 passport that shows only international travel, even though Ms. Prakash told Sun Life she could not meet the travel requirements of her job, could not sit for more than a few minutes at a time, and Counter-Defendants intend to put on evidence regarding her supposed inability to travel.

This destruction and withholding of evidence has severely and irreparably prejudiced Sun Life. Counter-Defendants admit most of this destruction occurred. Their only defense is that the spoliation ostensibly was committed by Verseon which they attempt to characterize as a third-party. This is a sham and no excuse. Eniko and Adityo Prakash were founders of Verseon, and it was run out of their home for many months. Adityo has always been its Chief Executive Officer and testified for Verseon when the Company was deposed. The Prakashes have always been members of the Verseon Board of Directors. They caused Verseon to hire the same lawyer who represents them on the Counter-Claim, Mr. Padway. They controlled Verseon's actions.

Counter-Defendants cannot hide behind Verseon. They had the obligation and the power to preserve evidence at the Company but either directed, or at minimum allowed, the active destruction of evidence related to Ms. Prakash's involvement with Verseon.

The destruction was deliberate and warrants the ultimate sanction – the striking of Counter-Defendants' answer. The Ninth Circuit affirmed a dismissal of a claim in a situation far less egregious than this. *Leon v. IDX Systems Corp.*, 464 F.3d 951, 959 (9th Cir. 2006). There, the plaintiff merely deleted certain files from a laptop that he claimed were personal. Here, Counter-Defendants destroyed an entire computer hard drive, wiped all data from Eniko Prakash's laptop,

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

-3-
SUN LIFE'S MOTION IN LIMINE NO. 1
CASE NO.: C06-07592 SC (BZ)

and systematically destroyed all data about her on Verseon's servers.  This bad faith conduct requires the striking of Counter-Defendants' answer.

In the alternative, Sun Life is entitled to severe evidentiary sanctions.  Counter-Defendants should be precluded from arguing that Eniko performed no work for Verseon from 2002 to the present or that her employment in 2006 and 2007 was a "failed return to work."  The jury should also be instructed that it should draw the inference that the destroyed or non-produced evidence would have been unfavorable to Counter-Defendants' position.

## 2.   STATEMENT OF FACTS

### A.   Eniko Helps Found Verseon and Serves on Board After Going on Disability Claim

Eniko Prakash was one of the principal owners, inventors and stockholders at Pulsent Corporation, a technology company.  She was also a participant in the Pulsent Corporation Employee Benefit Plan, a now-defunct ERISA plan that provided long term disability benefits to eligible employees.  Eniko was the Chief Corporate Development Officer.

In 2002, Eniko filed a claim for disability benefits based on a knee condition.  She had arthroscopic surgery on the knee on June 12, 2002, with the prognosis that she would return to work as early as August 15, 2002.  Eniko and Adityo were fired from Pulsent by the Board of Directors on June 13, 2002, the day after Eniko's surgery.  In July 2002, Eniko and Adityo founded Verseon.  They started the company out of their house and then, sometime in 2003, moved the company to an outside office space.

Eniko was a member of Verseon's Board of Directors, using her maiden name of "Eniko Fodor," and attended and signed the minutes for at least 18 consecutive Board meetings between May 28, 2003 and July 21, 2007.   She still holds this position.  Eniko did not advise Sun Life of her termination from Pulsent or her position as a Director of Verseon, facts Sun Life itself first discovered in 2006.

Eniko has claimed continuing disability since June 12, 2002 and contends that she has never been able to return to work.  Sun Life terminated Eniko's disability benefits in March 2005 on the ground that her knee condition did not preclude her from returning to work, and Eniko appealed.

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

-4-
SUN LIFE'S MOTION IN LIMINE NO. 1
CASE NO.: C06-07592 SC (BZ)

During the appeal process, Sun Life learned additional information that was inconsistent with Eniko's representations that she was totally disabled.  For example, Eniko was listed as a co-inventor on 14 patent applications made during the period of her alleged disability.  Applications for five of these patents were made by Verseon.  These five patents, which form the basis of Verseon's business, involve the application of complex computer algorithms in discovering new medicines.

**B.**     **Sun Life Denies Eniko's Appeal and then she Immediately Starts Working at Verseon as its Chief Operating Officer**

Sun Life denied Eniko's appeal on July 6, 2006, concluding that she was capable of working with certain accommodations.  Sun Life confirmed the denial of benefits, in part, because of evidence that she had connections with Verseon as a director and inventor.  During the appeal, Eniko claimed that she was incapable of any sustained work and that even taking a shower left her exhausted.  Nonetheless, within a mere six weeks after the termination of benefits, Eniko was preparing for work with Verseon as an executive officer.

She officially started working on September 1, 2006, as Verseon's Chief Operating Officer.  She began working half-time.  Fifteen days after she started, Verseon paid Eniko a bonus of over $77,000.  On November 1, 2006, she increased to full-time.  Her base salary was $185,000.

One month after she moved to full-time as Verseon's COO, Eniko filed this lawsuit against Sun Life seeking ERISA benefits.  She alleged in her complaint that she was totally disabled from even a sedentary position and sought full disability benefits from March 2005 to July 2032.  The complaint did not mention that she was working full time at Verseon or include any offset for her salary.  Declaration of Travis R. Wall (Wall Decl.), Ex. A.

Sun Life answered the complaint and filed a Counter-Claim on February 26, 2007 against Eniko and Adityo Prakash, contending that they had misrepresented her condition and abilities during her alleged disability.  Sun Life sought recovery of previously paid benefits.  Wall Decl., Ex. B.  The Counter-Claim squarely put at issue Ms. Prakash's activities for Verseon.  Counter-Claim, ¶ 23 (putting Counter-Defendants on notice of the evidentiary significance of Verseon's records).  Ms. Prakash took a medical leave of absence from Verseon within one month after

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

-5-
SUN LIFE'S MOTION IN LIMINE NO. 1
CASE NO.: C06-07592 SC (BZ)

1   learning about the filing of the Counter-Claim, having been paid over $160,000 for seven months of

2   admitted employment.  Wall Decl., Ex. S.

3       **C.**    **Sun Life Obtains Almost No Information in Discovery Regarding Eniko's**

4               **Patent and Employment Activity at Verseon**

5       Sun Life has attempted to obtain patent and employment information from both

6   Counter-Defendants and Verseon since the opening of discovery.  On April 11, 2007, Sun Life

7   served document requests on Eniko, and within one week Sun Life served deposition notices on

8   Eniko and Adityo that included document requests.  Wall Decl., Exs. D, E & F.  The requests

9   sought, in part, all documents arising out of, evidencing or relating to any work performed or

10  position held by Eniko at Verseon at any time.  Wall Decl., Ex. D.  In response to Sun Life's

11  discovery requests, Counter-Defendants produced abstracts for four patent applications, a seven-

12  page Verseon personnel file and a W-2 form related to Eniko's prior employment at Pulsent.

13  Wall Dec. ¶ 8.

14      Sun Life also sought information from Verseon, first serving a document subpoena on

15  Verseon on May 18, 2007 seeking records regarding Ms. Prakash's activities and work for Verseon.

16  Wall Decl., Ex. D.  Verseon later produced some indecipherable material related to patent

17  applications contained on a compact disk.  Wall Decl. ¶ 11.  Verseon's counsel would not permit

18  Sun Life to take substantive notes about the documents or obtain a hard copy.  Verseon's and

19  Counter-Defendants' productions did not include any work product regarding Eniko's admitted

20  work as COO, from September 1, 2006 to March 31, 2007, even though it ended just seek six weeks

21  prior to the service of Sun Life's subpoena.

22      Due to the lack of production, on November 26, 2007, Sun Life served a further document

23  subpoena containing more specific requests, and a corporate representative subpoena.  In response,

24  Sun Life received minimal materials regarding Eniko's employment activities:  board meeting

25  minutes, a one page document that supposedly reflects Eniko's work activity while employed at

26  Verseon, some budgeting documents, and a small stack of emails.  Wall Decl. ¶ 13.

27

28

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

-6-
SUN LIFE'S MOTION IN LIMINE NO. 1
CASE NO.: C06-07592 SC (BZ)

### D.  <u>Verseon's Production Lacked Documents Employers Typically Maintain</u>

Ms. Prakash was a co-founder of Verseon, invented the patents that form the basis of Verseon's business, served as a director since Verseon's inception in 2002, and admits she worked as Verseon's COO for seven months.  Despite her extensive ties to the company, Verseon and Counter-Defendants produced virtually nothing.  Following is a non-exhaustive list of common employment-related documents that Verseon claims it could not locate:

- No W-2s;
- No attendance records, including electronic pass key information for Verseon's facilities;
- No computer user activity log or the equivalent that should show when a person logged in and what work they did on Verseon's system;
- No electronic data or other documents reflecting Eniko's remote computer access to the Verseon computer system;
- No letters, word documents, spreadsheets or other data (with the exception of a one-page word document and some budgeting documents) reflecting the work she performed over six months;
- No e-mails except those saved in an archive file Verseon contends it created in late April 2007; the e-mail file Verseon saved did not include any outgoing e-mails (except for eight e-mails that had been sent back to Eniko in an e-mail chain);
- No voicemails to or from Eniko even though Verseon's system sent voicemails to employee's e-mails as a wave or media file;
- No computer calendaring information and contacts, such as those in Outlook;
- No phone records, even though Verseon paid Eniko's cell phone bills;
- No expense records reflecting reimbursements for expenses that Eniko admittedly incurred, including travel.

Wall Decl. ¶ 18.

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

-7-
SUN LIFE'S MOTION IN LIMINE NO. 1
CASE NO.: C06-07592 SC (BZ)

**E.** **Counter-Defendants Systematically Destroyed All Evidence Reflecting Eniko's Work for the Company**

Counter-Defendants and their counsel assured the Court in a March 16, 2007 case management statement that they had taken all appropriate measures to preserve relevant evidence. Wall Decl., Ex. C (Docket No. 13). Ms. Prakash still worked at Verseon at the time they made these assurances. When she quit a few weeks later, all her work product and employment related data remained on Verseon's servers and was required to be preserved. Her desktop and laptop computers remained intact. Despite the fact that Counter-Defendants had the ability and the legal obligation to preserve this evidence, they destroyed (or allowed to be destroyed) almost all records relating to Eniko's activities. The evidence destruction was comprehensive and reached all types of documents and data related to Eniko.

(1)     Verseon Destroyed Eniko's Desktop Computer

Verseon physically destroyed Eniko's desktop computer after the commencement of discovery in this action. Verseon admits that this destruction occurred in late April or early May 2007. Sachin Ahuja, Verseon's manager of computer solutions, testified that he not only overwrote all information on the desktop hard drive so that any previous data was unrecoverable, but ran a magnet over the hard drive, making in unreadable and unusable. He then discarded the hard drive. All data on the computer was lost, including any calendaring information and notes reflecting meetings or computer usage, except for some e-mails and a few budgeting documents he chose to preserve on a compact disc. Wall Decl. Ex. J at 14:11-18:23.

Verseon claims the procedure used was part of its "normal" document retention policy whenever an employee is terminated. *But Ms. Prakash's employment with Verseon was not terminated – she took a medical leave of absence as recorded in a form signed by Counter-Defendant Adityo Prakash.* Wall Decl. Ex. S. As such, purported "termination" destruction of records policies would not even apply. Moreover, Verseon could not produce any writings to substantiate its claim that this extreme and nonsensical procedure was "normal" or documented. It makes no sense to erase a computer's data and then *physically destroy* the hard drive simply because a person is leaving the company. The computer is not leaving with the employee.

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

-8-
SUN LIFE'S MOTION IN LIMINE NO. 1
CASE NO.: C06-07592 SC (BZ)

Verseon intended to hide the extent of Eniko's activities and invented this document "retention" procedure to justify its spoliation of evidence.  In any event, the destruction should not have occurred under any circumstances.  Counter-Defendants had a legal obligation to halt all document retention procedures that might result in the loss of relevant evidence.  It did not do so, but instead allowed or directed the destruction of highly relevant evidence pertaining to Eniko's work.

(2)     Verseon Erased all Files and Data on Eniko's Laptop after Sun Life Issued a Subpoena

The destruction was not limited to Eniko's desktop computer.  Counter-Defendants also destroyed all data on her laptop.  Verseon issued a work laptop to Eniko.  She used this computer to work and to gain access to Verseon's system when she was out of the office.  On May 18, 2007, Sun Life issued a document subpoena on Verseon, which sought in part all documents and electronically-stored information related to Eniko's work activities for Verseon.  Wall Decl., Ex. G.

Despite service of the subpoena, Verseon erased all data on Eniko's laptop and then overwrote the data with a new operating system after issuance of the Sun Life's subpoena.  Mr. Ahuja of Verseon, who reported to Adityo Prakash, admitted in deposition that he erased this data *after* Sun Life served a document subpoena on Verseon:

Q.     Do you remember when you wiped the laptop?

A.     I really can't remember now. It was fairly early on, somewhere in the middle of the year.

Q.     Did you wipe the laptop before you did the document search related to the subpoena?

A.     Oh, no, afterwards.

Wall Decl. Ex. J at 19:24-20:6, 146:13-16.

Counter-Defendants knew that Eniko's laptop was a central piece of evidence in this case. Nonetheless, they allowed all files on the computer to be destroyed.

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

(3)   <u>Verseon Manipulated Data and "Shredded" a File on Eniko's Laptop One Day before a Court Ordered Inspection</u>

Verseon even destroyed data in direct violation of court orders.  Counter-Defendants contended that all data on the laptop had already been destroyed.  Sun Life, nonetheless, sought an inspection of the laptop computer, because, unlike the desktop, it had not been physically destroyed.

Verseon refused, forcing Sun Life to file multiple motions to gain access.  On February 29, 2008, Magistrate Judge Zimmerman issued an order allowing Sun Life's expert to conduct a physical inspection of the laptop computer.  Wall Decl. Ex. K (Docket No. 122).  Sun Life's expert, however, was not allowed to copy any data and could not look at any files without Mr. Ahuja's consent.  The court also ordered Verseon to preserve the laptop and expressly ordered the company not to delete any files on the computer.  *See id.*

Sun Life's expert conducted the inspection on March 10, 2008.  The expert conducted a key word search for "eniko," "fodor," and "prakash."  "Fodor" is Eniko Prakash's given name.  The search resulted in approximately 5900 hits to systems files and subdirectories referring to Ms. Prakash.  The key word search suggested that, despite Mr. Ahuja's attempt to erase the computer's data, some information related to Ms. Prakash's prior use of the computer still existed in "unallocated space."  Wall Decl. ¶ 22.

Sun Life moved for an order requiring Mr. Padway, Verseon's counsel, to maintain control over the laptop and ensure no one used it.  The court granted this request and then allowed Sun Life's expert to obtain a mirror image of the computer's hard drive, subject to certain limitations.  *See* Wall Decl., Ex. M (Docket No. 199).  Verseon objected to the order.  Before the district court could act on the objection, Verseon filed a premature appeal to the Ninth Circuit, which the appellate court ultimately dismissed for lack of jurisdiction.

Verseon finally complied with the court-ordered imaging of the laptop on January 9, 2009.  Sun Life's expert reviewed the laptop data and confirmed that all user information related to Ms. Prakash had been successfully wiped from Ms. Prakash's laptop and that a new operating system was installed in October 2007, well after Verseon and the Prakashes had been served with discovery seeking evidence of Ms. Prakash's work activities.  *See* Wall Decl, Ex. N.  There was still evidence,

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

-10-
SUN LIFE'S MOTION IN LIMINE NO. 1
CASE NO.: C06-07592 SC (BZ)

however, that the computer was named "vus_efodor," proving that it was not only assigned to her but was her personal computer even after the laptop was wiped.[1]

The expert's inspection also revealed that someone deliberately manipulated files on the drive and deleted a file the day before the first court-ordered inspection on March 10, 2008. The computer data reveals that, on March 9, 2008, someone accessed the laptop, perused user files and log files, attached a device to the computer and downloaded files from an external device, changed the ownership of certain files on the computer, and deleted a file entitled "vus_rnd_new.odg." *Id.* at 7. "Vus" appears to be a prefix that Verseon uses for its computers and files. Sun Life believes that the term "rnd" refers to "research and development."

The "shred" command used to delete this file instructed the computer to replace the data with random characters 20 times and then on the last run replace the data with zeros. *This command is intentionally used to delete files in such a way as to conceal shredding and avoid arousing suspicion. Id.* at 7; *see also* Wall Decl., Ex. T (describing the shred command). The destruction of this file was not done through inadvertence, mistake or neglect. Rather, it was a calculated attempt to manufacture evidence and delete data in direct violation of a court order the day before an ordered inspection.

(4)     Verseon Destroyed Ms. Prakash's E-Mails

Mr. Ahuja contends that he saved Ms. Prakash's e-mails to a compact disk before physically destroying the desktop hard drive. In January 2008, over seven months after Sun Life served its first subpoena on Verseon, Mr. Padway finally produced a small stack of e-mails. He claimed that they represented all e-mails on Ms. Prakash's computer. The production is facially suspect.

First, the production contains none of Ms. Prakash's outgoing e-mails (other than e-mails subsequently sent back to her as part of an e-mail exchange). Verseon obviously chose to copy select e-mails from her inbox and then destroyed the rest.

Second, the stack Verseon produced is plainly incomplete. There are only eight e-mails drafted by Ms. Prakash among the entire production. It is inconceivable that, over the span of seven

_____

[1] Mr. Albee's report included exhibits. Sun Life did not include the exhibits in this filing but will submit them at the Court's request.

months as Chief *Operating* Officer, Ms. Prakash only sent eight work-related e-mails.  Most people send more e-mails than that in a single day.

> (5)    Verseon Destroyed Voicemails that Ms. Prakash Sent and Received

Mr. Ahuja testified that voicemails were saved to an employee's desktop as a media or wave file.  Wall Decl., Ex. J at 21:3-9.  Verseon's production, however, did not include a single voicemail that Ms. Prakash sent or received.  Again, it is inconceivable that Ms. Prakash never sent or received any voicemails in seven months as Chief Operating Officer.  This means that someone systematically destroyed voicemail files that were contained in Ms. Prakash's e-mails and that Verseon made no good faith attempt to locate voicemails from Ms. Prakash on other employees' computers.

> (6)    Counter-Defendants Made No Attempt to Halt the Overwriting of Data on Verseon's Servers

Ms. Prakash was still working at Verseon when Sun Life filed its Counter-Claim.  Thus, there should have been a tremendous amount of information about her on Verseon's servers, such as Ms. Prakash's work product, e-mails, computer user activity logs, records of remote computer access to Verseon's system, and computer calendaring information.  Verseon contends that none of this information exists about Ms. Prakash and that, except for a few files saved on her "archive file" during the pendency of this litigation, all other information has been destroyed or lost through the overwriting of data on Verseon's servers.  The archive file did not contain all information on Ms. Prakash's computer, but only those few files and e-mails Mr. Ahuja chose to save.  Wall Decl. Ex. J, at 15:14-16:4.

This complete lack of evidence of Verseon's system is not plausible.  At the time Ms. Prakash left Verseon on March 31, 2007, she left full employment, and all user logs, e-mails and work product related to Ms. Prakash existed on Verseon's servers.  Counter-Defendants cannot provide a legitimate explanation for why these documents and data were not preserved and could not be produced.

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

(7)     <u>Verseon Withheld the Production of Relevant Documents</u>

Verseon not only has destroyed data, but has concealed documents it has in its possession. Sun Life requested that Verseon produce copies of Ms. Prakash's enrollment form seeking coverage under Verseon's group disability policy. Wall Decl. ¶ 26. This document is relevant to both Sun Life's Counter-Claim and Ms. Prakash's claim for ERISA benefits under the Sun Life policy. Verseon's counsel represented not only that the enrollment form did not exist, but that Verseon did not require employees to fill out any forms for disability coverage because employees were enrolled automatically.. Wall Decl., Ex. O.

These representations were false. Sun Life subsequently subpoenaed the other disability insurance company directly. That company produced a disability enrollment form that *Ms. Prakash personally completed and signed*. Wall Decl., Ex. P. This demonstrates not only that the document existed, but also that there was no "mandatory" or automatic enrollment as Verseon's counsel falsely suggested.

Sun Life attempted to obtain copies of offering circulars and investor related documents in March 2008 to determine what representations were made to potential investors with regard to Verseon's management and Ms. Prakash. Verseon's counsel represented at that time that his client looked for such documents, but that none of them even mentioned Ms. Prakash. Declaration of John S. Pierce, ¶ 6, Ex. V. In January 2009, Sun Life served a document subpoena directed at subscription agreements and similar documents. Verseon refused to comply. In moving to enforce the subpoena, Sun Life later learned for the first time that Verseon did have offering circulars and similar documents that describe Ms. Prakash at least as a "founder" or "director." Wall Decl., Ex. U (Declaration of Adityo Prakash, ¶ 3). Despite the fact that these investor-related documents mention Ms. Prakash and are plainly relevant to the initial document subpoena served on Verseon, Counter-Defendants have refused to produce them.

The mere fact that Ms. Prakash is listed as a "founder" is significant, since it reflects her activities in July 2002 at a time when Ms. Prakash claimed to be totally disabled. It is also inconsistent with Ms. Prakash's, Mr. Prakash's and Verseon's claim that Ms. Prakash was not actively involved in the formation or development of the company. Verseon still has not produced

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

-13-
SUN LIFE'S MOTION IN LIMINE NO. 1
CASE NO.: C06-07592 SC (BZ)

these documents, despite the fact that they are responsive to the initial document subpoena served on Verseon in May 2007.

### 3.    ARGUMENT

#### A.    <u>Spoliation of Evidence can be Shown with Either Intentional or Negligent Conduct</u>

Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *See West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). Both the destruction and the non-production of material evidence will support a spoliation claim. *See Residential Funding Corp. v. Degeorge Financial Corp.*, 306 F.3d 99, 113 (2d Cir. 2002).

Once a party is in litigation or even *simply anticipates litigation*, it must suspend its routine document destruction policies and put in place a "litigation hold" to ensure the preservation of relevant documents. *Zublake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003). If backup tapes or servers are accessible, then such tapes or servers would be subject to the litigation hold as well. *Id.*

A party's destruction of or failure to preserve evidence qualifies as spoliation if the party has "some notice that the documents were *potentially* relevant to the litigation before they were destroyed." *Leon v. IDX Systems Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (citing *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002) (emphasis added)). A finding of "bad faith" is not a prerequisite to a spoliation claim. This showing certainly would suffice, but so will simple notice of "potential relevance to the litigation." *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993). A party can be guilty of spoliation even if it only acted negligently. *Residential Funding v. Degeorge*, 306 F.3d 99, 108 (2nd Cir. 2002).

#### B.    <u>Counter-Defendants Had an Obligation to Preserve Evidence at Verseon</u>

Sun Life's appeal denial letter expressly references certain connections between Ms. Prakash and Verseon. Ms. Prakash sued Sun Life in December 2006, at which time she was charged with preserving evidence relating to her work at Verseon. The fact that most of the employment data was kept at Verseon does not excuse either Mr. Prakash's or Ms. Prakash's

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

-14-
SUN LIFE'S MOTION IN LIMINE NO. 1
CASE NO.: C06-07592 SC (BZ)

conduct.  Courts have extended the duty to preserve evidence to situations when that evidence is not directly within the party's custody or control, so long as the party has access to or indirect control of such evidence.  *See World Courier v. Barone*, 2007 U.S. Dist. LEXIS 31714 (N.D. Cal. Apr. 13, 2007); *see also Silvestri v. GMC*, 271 F.3d 583, 591 (4th Cir. 2001) (if a party cannot fulfill his duty to preserve because he does not own or control the evidence, he still has an obligation to give the opposing party notice of access to the evidence or of the possible destruction).

In *World Courier*, the husband of a party destroyed a hard drive containing potentially relevant evidence.  Defendants argued that they could not be sanctioned because the spoliator, Jay Barone, technically was not a party to the action.  *Id.* at *2.  The court rejected this argument, noting that a party has a duty to preserve evidence directly or indirectly within its control.  *Id.* at *3. The wife, who was a party, was in regular contact with her husband during the relevant time period. The court concluded that it would be difficult to imagine a scenario where her husband would destroy a hard drive relating to his spouse's pending legal matters and professional career without the knowledge, support or involvement of his wife.  *Id.*  Defendant "at least had access to or maintained indirect control over the hard drive, and therefore she had an affirmative duty to preserve it."  *Id.*

Verseon is a technology company with less than 30 employees.  The Prakashes are major shareholders and co-inventors of the company's patents.  They both are on the board of directors. Mr. Prakash, a named party, is the company's CEO, and thus certainly had the power to preserve evidence in Verseon's possession.  Verseon hired the same lawyer defending the Prakashes in this action.  As in *World Courier*, it would be difficult to imagine a scenario where lower level Verseon employees systematically destroyed data related to Ms. Prakash without Counter-Defendants' knowledge, support or involvement.  In any event, they had access to and direct or indirect control over all information in Verseon's possession, and thus had a duty to preserve it.

## C.    The Court Should Strike Counter-Defendants' Answer

The court has discretion to fashion appropriate remedies for the spoliation of evidence. Sanctions are available under FRCP Rule 37 against a party who "fails to obey an order to provide or permit discovery."  *Leon*, 464 F.3d at 958 (citing *Fjelstad v. American Motor Co.*, 762 F.2d

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

-15-
SUN LIFE'S MOTION IN LIMINE NO. 1
CASE NO.: C06-07592 SC (BZ)

1334, 1337 (9th Cir. 1985). Sanctions may also be ordered under the inherent power of federal courts to levy sanctions in response to abusive litigation practices. *Id.*

Sanctions can include the dismissal of claims or the striking of an answer. This is an available sanction when "a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings" because "courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Anheuser-Busch, Inc. v. Natural Beverage Distributors,* 69 F.3d 337, 348 (9th Cir. 1995) (internal quotation marks and citations omitted). Before imposing the "harsh sanction" of dismissal, however, the district court should consider the following factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Id.*

### (1)     Counter-Defendants Acted in Bad Faith

The evidence of spoliation easily supports a bad faith finding here. Counter-Defendants and their company Verseon intentionally destroyed Ms. Prakash's laptop, desktop, e-mails, voicemails, work calendars, work contacts, internet activity, and work product (except for a few files that Verseon's employees chose to save). They made no attempt to preserve user activity logs, computer login information, and e-mails saved on its servers. The company attempted to suppress her disability enrollment form and investor materials describing her as a founder of the company. Verseon also maintains that it cannot find basic information that any employer would maintain, such as her W-2, expense reports, attendance records and cell phone bills.

On March 16, 2007, Counter-Defendants' counsel assured the court in the parties' joint case management statement that he had instructed his clients to preserve evidence related to the lawsuit and halted the routine destruction of potentially relevant material. Wall Decl. Ex. C (Docket No. 13). During the following months, Counter-Defendants directed or allowed Verseon to destroy practically all information and data related to Ms. Prakash's work, including her desktop and laptop computers. Far from suspending its "routine" document destruction and implementing the required litigation hold, the company accelerated the destruction and took no steps to prevent its computer

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

-16-
SUN LIFE'S MOTION IN LIMINE NO. 1
CASE NO.: C06-07592 SC (BZ)

1   systems from overriding or erasing data, e-mails and other documents related to Ms. Prakash's

2   work.  The document destruction was too deliberate and comprehensive to have been a mere

3   mistake.[2]

4         The destruction in this case was far more egregious than that in *Leon*, where the Ninth

5   Circuit upheld the dismissal of a plaintiff's claim due to destruction of data on a laptop.  *Leon,* 464

6   F.3d at 959.  During the pendency of litigation, Leon deleted files from a laptop computer and

7   wiped data in the computer's unallocated space.  Leon claimed that his wiping of files was merely

8   negligent because he meant to wipe only "personal" information.  The trial court noted, however,

9   that "Dr. Leon did not have the authority to make unilateral decisions about what evidence was

10  relevant in this case."  *Id.* at 956-57.  The court concluded "that the extraordinary measures to

11  which Dr. Leon resorted to destroy evidence relevant to this litigation merit a finding of bad-faith."

12  *Id.* at 957.

13        Turning to the choice of sanction, the trial court found that dismissal was the appropriate

14  sanction because a ruling excluding evidence would be "futile, as the most salient evidence has

15  been destroyed," a jury presumption in favor of the defense would be ineffectual, and a fine would

16  not "arm the Defense with evidence to counter Plaintiff's claim."  *Id.*

17        The Ninth Circuit affirmed the trial court's dismissal.  The court summarily rejected Leon's

18  argument that he destroyed only "irrelevant" files.  Because "the relevance of ... [destroyed]

19  documents cannot be clearly ascertained because the documents no longer exist," a party "can

20  hardly assert any presumption of irrelevance as to the destroyed documents."  *Id.* at 959.

21        In this case, Verseon not only intentionally wiped all data from Ms. Prakash's laptop, but

22  physically destroyed her desktop computer and failed to preserve other records related to her work

23  for the company.  Even when Verseon did save certain files and e-mails to an "archive" file, Mr.

24  Ahuja testified that he only saved those files he believed to be "important."  Wall Decl., Ex. J at

25  15:14-22.  There are also noticeable gaps in the files he saved, including missing e-mails, work

26  calendars, and contacts.  Wall Decl. ¶ 18. Sun Life should not have to rely upon Counter-

27  _____

28  [2] Even information held in a computer's random access memory (RAM) constitutes "electronically
    stored information" and thus is within the scope of discoverable information.  *See Columbia*

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

-17-
SUN LIFE'S MOTION IN LIMINE NO. 1
CASE NO.: C06-07592 SC (BZ)

1  Defendants' and Verseon's determination of what information on Ms. Prakash's computers was

2  important to this case. The Court cannot even evaluate this claim since the computers, documents

3  and files no longer exist.

4     Counter-Defendants should not be able to benefit from their willful destruction of evidence.

5  The destruction was intentional, and Counter-Defendants cannot claim "innocence" on the ground

6  that the destroyed computers and files supposedly were not relevant or probative.

7                    (2)     The Spoliation Prejudiced Sun Life

8     The prejudice inquiry "looks to whether the [spoiling party's] actions impaired [the non-

9  spoiling party's] ability to go to trial or threatened to interfere with the rightful decision of the case."

10  *Leon*, 464 F.3d at 959. In *Anheuser-Busch*, the Ninth Circuit found prejudice when a party's refusal

11  to provide certain documents "forced Anheuser to rely on incomplete and spotty evidence" at trial.

12  *Anheuser-Busch*, 69 F.3d at 354.

13     In *Leon*, the trial court found that the defendant would be prejudiced by Leon's deletion of

14  files and emphasized that there was no way to recreate the contents of the deleted files. As the trial

15  court observed and the Ninth Circuit affirmed, the types of files Leon would have deleted out of

16  privacy concerns would "likely be at the heart of IDX's defense were [the files] available." *Leon,*

17  464 F.3d at 960. Leon's spoliation "threatened to distort the resolution" of the case, although it

18  might be impossible to identify which files and how they might have been used. *Id.*

19     Here, evidence of Ms. Prakash's work for Verseon and the scope of her activities go to the

20  heart of this case. Ms. Prakash alleged in her complaint that she has been totally disabled and

21  unable to perform any work from June 2002 to the present. Sun Life countersued on the grounds

22  that the Prakashes misrepresented and concealed her true condition, ability to work and activities

23  with Verseon. Evidence of her activities for Verseon from 2002 to the present is plainly relevant to

24  this case.

25     Critically, Sun Life's discovery sought evidence not only concerning Ms. Prakash's return to

26  work in September 2006, but also her activities since the company's foundation in July 2002.

27  Sun Life believes that she was working for the company in some capacity prior to her admitted

28  _____

*Pictures, Inc. v. Bunnell*, 245 F.R.D. 443 (C.D. Cal. 2007).

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

-18-

SUN LIFE'S MOTION IN LIMINE NO. 1
CASE NO.: C06-07592 SC (BZ)

return to work and that her computer records would support this claim. Among other things, Ms. Prakash is identified in investor documents as a founder of Verseon and is listed as co-inventor on Verseon's 2004 patent applications. As early as December 2005, there is evidence that she has already started handling operational aspects of the company. Wall Decl., Ex. R.

Sun Life and the court will never know what was on Ms. Prakah's computers, Verseon's servers and files, or in Counter-Defendants' possession because they have allowed Verseon to destroy this evidence. Requiring Sun Life to go to trial on the basis of the incomplete and spotty evidence that Counter-Defendants chose to produce would result in a "distortion" of the trial. Eniko and Adityo Prakash intend to put on evidence that Ms. Prakash was incapable of working and was in a "brain fog" that left her totally incapacitated. They will argue to the jury that there is no evidence that Ms. Prakash performed any work for Verseon prior to September 2006 and that her employment was a "failed" return to work. The evidence Counter-Defendants destroyed would have been directly relevant to rebutting these claims. The destruction was prejudicial and warrants a striking of Counter-Defendants' answer.

### D. At a Minimum, Sun Life is Entitled to Evidentiary Sanctions and a Jury Instruction Permitting an Adverse Inference against Counter-Defendants

If the court does not strike the answer, Sun Life is entitled, at a minimum, to evidentiary sanctions and the spoliation inference. Counter-Defendants should be precluded from introducing evidence or argument contending that Ms. Prakash did not work for Verseon from July 2002 to at least March 2007, or contending that her admitted employment from September 1, 2006 to March 31, 2007 was a "failed return" to work. Sun Life also is entitled to an instruction to the jury that it may draw an adverse inference against Counter-Defendants that the destroyed or withheld evidence would not have supported their positions and that the jury should presume Ms. Prakash actively worked for Verseon from its formation in July 2002 through at least March 2007 as the result of their and their company Verseon's destruction of evidence. Permitting a spoliation inference alone would not be sufficient, since fashioning a jury instruction that creates a presumption in favor of Sun Life would leave it "equally helpless to rebut any material that [Counter-Defendants] might use to overcome the presumption." *Leon,* 464 F.3d at 960.

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

The evidence Counter-Defendants destroyed goes to the heart of this case.  Counter-Defendants have systematically destroyed the strongest evidence Sun Life would have used to rebut Counter-Defendants' claims that Ms. Prakash did no work or was incapable of working.  To permit the trial to proceed without evidentiary sanctions would distort the trial and be unfair to Sun Life.

### 4.    CONCLUSION

For the foregoing reasons, Sun Life respectfully requests that the court grant this motion for sanctions and strike Counter-Defendants answer.  In the alternative, Sun Life is entitled to evidentiary sanctions and a spoliation inference.

Dated:  March 10, 2009                          BARGER & WOLEN LLP


By:   /s/ J. Russell Stedman
        J. RUSSELL STEDMAN
        TRAVIS R. WALL
        Attorney for Real Parties in Interest
        SUN LIFE ASSURANCE COMPANY
        OF CANADA and its dba SUN LIFE
        FINANCIAL

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

-20-
SUN LIFE'S MOTION IN LIMINE NO. 1
CASE NO.: C06-07592 SC (BZ)